CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

07/27/2017

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:16-cr-00028 |
| v. | MEMORANDUM OPINION |
| JOSH T. WIMER,<br>                    *Defendant.* | JUDGE NORMAN K. MOON |

Pursuant to 18 U.S.C. § 3402 and Rule 58(g)(2), Defendant Josh T. Wimer has appealed his misdemeanor conviction for driving a motor vehicle with a revoked driver's license.  (Dkts. 1, 4-1); 36 C.F.R. § 261.54(d) (incorporating Va. Code § 46.2-301 on federal property).  His charge stemmed from an interaction with a United States Forest Service officer at a road closure barricade in George Washington National Forest.  Defendant seeks to overturn his conviction on the ground that the encounter constituted a seizure in violation of the Fourth Amendment.

The central issue is whether Defendant's interaction with the officer was consensual. Because a reasonable person in Defendant's circumstances would have felt free to leave, the initial interaction was a consensual one.  Accordingly, there was no Fourth Amendment violation, and Magistrate Judge Joel Hoppe correctly denied Defendant's motion to suppress. Defendant's conviction will therefore be affirmed.

## I. STANDARD OF REVIEW

A defendant convicted by a magistrate judge may appeal to a district court judge in the district where there offense was committed.  18 U.S.C. § 3402.  "An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a

district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (citing Fed. R. Civ. P. 58(g)(2)(D)).

When considering the denial of a motion to suppress, "[f]indings of fact made by the trial court are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo." *Bursey*, 416 F.3d at 306; *see also United States v. Abramski*, 706 F.3d 307, 313–14 (4th Cir. 2013). The Court must "construe the evidence in the light most favorable to . . . the prevailing party below." *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998). Thus, the Court "assess[es] challenges to the sufficiency of the evidence by viewing it—including all reasonable inferences to be drawn therefrom—in the light most favorable to the Government." *Bursey*, 416 F.3d at 306.

## II. FACTS

On March 18, 2016, Officer Katie Ballew of the United States Forest Service was working in the George Washington National Forest, within the Western District of Virginia, at the intersection of St. Mary's Road and Coal Road. (Dkt. 7 at 3–4, 7). Officer Ballew was in the area to help direct traffic at a road closure, pursuant to 36 C.F.R. § 261.53(e), due to "a walled-in fire" in the Forest. (*Id.* at 4). The closure order had been lawfully obtained and posted in the district office. (*Id.* at 4–5).

Officer Ballew testified that St. Mary's Road was recently paved and "is a very narrow road, hard to navigate." (*Id.* at 6). That evening there was "a great deal of traffic approaching the barricade," and Ballew, along with another officer, "would have to turn them around." (*Id.* at 6–7). There was no intervention plan in place, and the two officers had not agreed to stop any particular vehicles. (*Id.* at 7). Rather, Officer Ballew testified that they "were just trying to get the vehicles out of there." (*Id.*). The traffic that night was "pretty heavy" because people often

2

like to come see forest fires on the mountains. (*Id.* at 8). Officer Ballew and the other officer were "hand-signaling other vehicles to stop, so we could get one vehicle turned around. It was kind of a mess." (*Id.*). As Officer Ballew testified:

> There was just such a jam. It was just really quite a mess. Most of the other vehicles couldn't even turn around. They had to stop vehicles from coming in, so one vehicle could just make the, you know, five-point turn, just to turn around and get out, and then do it with the next vehicle, because they were all just in a line. It was just kind of a jam.

(*Id.* at 19).

At approximately 8:00 p.m., Defendant approached Officer Ballew and the road closure sign. (*Id.* at 9). Officer Ballew testified that "[r]ight away I recognized [Defendant] from a previous law enforcement contact." (*Id.*). The previous contact had been "[a] few years ago," and she remembered that during her previous contact with Defendant his license had been revoked. (*Id.* at 10).

As Defendant approached the roadblock, Officer Ballew walked up to the driver-side window to speak to him. At this point Defendant had not yet turned his vehicle around. (*Id.* at 16). Officer Ballew testified that he could not proceed because of the barricade, and he could not have turned around because the road was narrow (*Id.*). She did not turn on her patrol vehicle lights (as it was a few paces away), use a flashlight, remove her gun from her holster, or ask Defendant to pull over at that time. (*Id.* at 8, 10–11).[1] In other words, Officer Ballew simply approached the car as it waited to turn around.

When Officer Ballew arrived at Defendant's driver-side window she said, "Hello. How are you?" "Are you revoked?" "Where is your license?" (*Id.* at 10, 16). Defendant stated that he had left his license at home, and Officer Ballew responded, "Now let's not lie about this. You

---

[1]      Officer Ballew testified that Defendant "was still free to leave." (*Id.* at 11).

know, no big deal.  Are you suspended?"  (*Id.* at 10).  Defendant said "yes," and Officer Ballew motioned him to pull over towards her patrol vehicle.  (*Id.*).  Officer Ballew then searched for Defendant's information, and Augusta County Emergency Communications confirmed that his driver's license was suspended.  (*Id.* at 11).  She issued him a violation notice, and a passenger in the vehicle who was licensed agreed to drive them home.  (*Id.* at 11–12).

### III.  MAGISTRATE JUDGE'S FINDINGS

Defendant moved to suppress the evidence garnered from the interaction between Officer Ballew and himself on the grounds that it constituted a *de facto* roadblock and that he was "seized without reasonable articulable suspicion that criminal activity was afoot."  (*Id.* at 23). Defendant argued that because he was "prohibited from going further," the interaction constituted a seizure.  (*Id.*).  And because Officer Ballew lacked reasonable articulable suspicion when asking her initial questions, so Defendant's argument went, his seizure was unlawful.  (*Id.* at 24–25).[2]

Judge Hoppe denied Defendant's suppression motion, finding that Defendant's interaction with Officer Ballew did not constitute an unlawful seizure.  (Dkt. 8 at 3).[3]  While Judge Hoppe agreed that Officer Ballew's past interaction with Defendant was "far too remote to provide reasonable suspicion to justify a seizure," he held that Officer Ballew's "actions would not convey to a reasonable person that he was not free to decline her request to leave."  (*Id.* at 9).  Thus, "no traffic stop or seizure occurred until after [Officer] Ballew had developed reasonable suspicion to

---

[2]      It is not contested for purposes of this appeal that Officer Ballew initially lacked reasonable articulable suspicion.  Thus, the critical issue is whether the initial interaction was a seizure (which requires such suspicion), or a consensual encounter (which would not).

[3]      The Court's citations to the December 15, 2016, hearing will be to the page numbers from the official transcript, rather than the ECF page numbers.

justify the seizure." (*Id.* at 10). Since Defendant had not been seized until after he had admitted that his license was suspended, Judge Hoppe reasoned, there was no Fourth Amendment violation.

Judge Hoppe then found Defendant guilty of operating a vehicle on a suspended license. (*Id.* at 10–11). Defendant was sentenced to one year probation, ordered to enroll in a payment plan with each court from which Defendant's license had been suspended, and ordered to pay at least ten percent of his monthly income to those payment plans. (*Id.* at 26–27, 29, 30). Defendant timely appealed.

## IV. DISCUSSION

### A. The Different Types of Police-Citizen Interactions

In the realm of police-citizen encounters, there are three general categories: "(1) arrest, which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective justification." *United States v. Brown*, 401 F.3d 588, 592 (4th Cir. 2005) (quoting *United States v. Weaver*, 282 F.3d 302, 209 (4th Cir. 2002)). This case turns on whether Defendant's initial interaction with Officer Ballew was a brief investigatory stop, which would have required reasonable articulable suspicion, or a consensual encounter, which required no objective justification.

A person is "'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 554. The crucial question then is whether "in view of all of the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave." *Id.* Furthermore, if the person has no reason to leave unrelated to the police presence and he passively acquiesces to the officer's show of authority, the "coercive effect of the encounter" can be measured by considering "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Brendlin v. California*, 551 U.S. 249, 255 (2007).

The analysis of whether a particular encounter was consensual is an objective exercise. The subjective intent of the officer is not relevant (unless of course the officer conveys an intention to detain to the citizen). *Mendenhall*, 446 U.S. at 554 n.6, 555. Instead, the Court looks to "all of the circumstances surrounding the incident." *Id.* at 554. Relevant factors include, but are not limited to: the number of police officers present, the words used by the officer, the officer's tone of voice and demeanor, whether the officers were in uniform and displayed their weapons, whether the officers made an attempt to block the citizen's departure or restrain his movement, whether the officer physically touched the citizen, and whether the citizen was treated as if suspected of illegal activity. *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002); *Gray*, 883 F.2d at 322–23.

**B.     This Case Concerns a Consensual Encounter**

Turning to the facts of this case, the record reflects that a reasonable person would have felt free to decline Officer Ballew's requests and leave. As Defendant approached the road closure sign and prepared to turn around, he was confronted with the following circumstances: two officers directing traffic, a narrow road, and heavy traffic behind him that made it difficult to turn around. (Dkt. 7 at 6–8, 16, 19). Officer Ballew walked towards the vehicle's driver-side window and asked, "Hello. How are you?" "Are you revoked?" "Where is your license?" (*Id.* at 10, 16).

6

This is the crucial moment in the encounter because in response to these questions, Defendant initially stated that his license was at home, (*id.* at 10), which gave Officer Ballew reasonable articulable suspicion of unlawful conduct.  *See* Va. Code § 46.2-104 (establishing that failure to carry one's license is a traffic infraction).  Thus, once Defendant responded that his license was at home, Officer Ballew possessed the legal authority for a brief investigatory stop.  So the issue boils down to:  Would a reasonable person—just before responding to Officer Ballew's initial questions as he sat in his car waiting to turn around—have felt free to decline to answer Officer Ballew's questions and continue turning his vehicle around?

Here, Defendant was not stopped or pulled over in the traditional sense.  Officer Ballew did not activate her patrol lights, motion for Defendant to pull over, or block Defendant's exit.  (Dkt. 7 at 8, 10–11).  She simply approached him and asked a few questions while he was about to turn his vehicle around.  And the mere fact that the individual being questioned is in a vehicle does not automatically transform an encounter into a traffic stop.

Although "stopping or diverting an automobile in transit . . . is materially more intrusive than a question put to a passing pedestrian," *Mendenhall*, 446 U.S. at 556–57, "[i]t is axiomatic that police may approach an individual on a public street and ask questions without implicating the Fourth Amendment's protections."  *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).  For instance, when an officer approaches a parked car and questions the driver, there is no seizure because a citizen in a parked car is akin to a pedestrian.  *United States v. Lewis*, 606 F.3d 193, 197–98 (4th Cir. 2010) (citing *Weaver*, 282 F.3d at 309).  By the same logic, the circumstances here—where an officer simply approaches a stopped car on the road and asks the driver a few questions—more closely resemble an officer-pedestrian encounter that does not implicate the Fourth Amendment, rather than a traffic stop that does.

This conclusion is bolstered by the "circumstances surrounding the incident," *Mendenhall*, 446 U.S. at 554, the most significant of which is the lack of coercive action by Officer Ballew.  Before posing her initial questions, Officer Ballew did not raise her voice, did not touch Defendant, did not order Defendant to pull over or gesture to him, did not activate her patrol car lights, did not call over another officer, and did not remove her gun from its holster. While none of these actions is a *sine qua non* for establishing a seizure, the absence of such authoritative actions weighs in favor of finding that the initial interaction was consensual.  *Id.* Considering the totality of the circumstances, including the dearth of coercive steps by Officer Ballew, a reasonable person in Defendant's position would have felt free to leave.

In support of his argument that the initial encounter was a seizure, Defendant asks the Court to focus less on Officer Ballew's actions and more on the overall situation he faced. Defendant contends that because of the narrow road, the barricade, and the heavy traffic, he may not have been able to turn around without an officer's assistance.  As such, he argues that regardless of Officer Ballew's intent, he was constructively trapped (*i.e.*, unable to leave) and thus seized.  (Dkt. 7 at 6–8, 16, 19).

Where officers block a car from leaving, a seizure has occurred.  *See, e.g.*, *United States v. Jones*, 678 F.3d 293 (4th Cir. 2012).[4]  A key distinction, however, between cases like *Jones* and the instant case is that here neither officer took any actions to block Defendant's exit.  If Defendant was unable to leave immediately, that was simply a consequence of circumstances outside the officers' control, namely, the road's narrowness and traffic volume.  Defendant still could have declined to answer and attempted to turn around and continue on his way.  Further

---

[4]    *See also United States v. Jones*, 562 F.3d 768 (6th Cir. 2009); *United States v. Green*, 111 F.3d 515 (7th Cir. 1997); *United States v. Pavelski*, 789 F.2d 485 (7th Cir. 1986); *United States v. Kerr*, 817 F.2d 1384 (9th Cir. 1987).

undercutting Defendant's argument, it is not clear from the record that Defendant was unable to turn around, and the Court must "construe the evidence in the light most favorable to . . . the prevailing party below." *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

Accordingly, the Court finds that based on the totality of the circumstances, a reasonable person in Defendant's situation would have felt free to decline Officer Ballew's questions and leave. Defendant's encounter with Officer Ballew therefore was consensual.

## C.    Virginia Code § 46.2-104 Does Not Apply

As an alternative ground for reversal, Defendant cites § 46.2-104 as proof that he was seized and required to respond to Officer Ballew's initial inquires. That section states, in relevant part, that "[t]he owner or operator of any motor vehicle . . . shall stop *on the signal* of any law-enforcement officer who is in uniform or shows his badge or other sign of authority and shall, on the officer's request, exhibit his registration card, driver's license . . . ." Va. Code § 46.2-104 (emphasis added).

The Virginia Supreme Court has held that the use of this statute by an officer constitutes a seizure. *McCain v. Commonwealth*, 261 Va. 483, 490 (2001). But the text requires, as a precondition to a stop, the officer to make to a "signal" to the citizen, a point reiterated by the Virginia Supreme Court. *Branham v. Commonwealth*, 283 Va. 273, 280 (2012) (Section 46.2-104 "applies only when such a driver has received a signal to stop from a law-enforcement officer."). Here, § 46.2-104 is inapplicable because Defendant received no such signal. Officer Ballew did not activate her lights or gesture for Defendant to stop as he approached the road closure, so she was not invoking her authority under § 46.2-104.

The facts of this case are analogous to *Branham v. Commonwealth*, where the Virginia Supreme Court held that § 46.2-104 was not implicated—and thus no seizure occurred—when

officers approached a car parked in a driveway and asked the driver for his license. *Branham*, 283 Va. at 277. Much like in *Branham*, Officer Ballew did not signal Defendant to stop; she simply approached his car after it had voluntarily come to a stop. Absent a signal to stop, Defendant was not required by Virginia law to answer Officer Ballew's questions, which means § 46.2-104 provides no support for Defendant's argument that he was seized.

### V. CONCLUSION

Much like a parked car on the street, Officer Ballew simply approached Defendant's stopped vehicle and asked him a few questions, without any related shows of authority. Based on the reasoning of *Lewis*, this was not a seizure; a reasonable person in Defendant's situation would have felt free to decline Officer Ballew's questions and drive away. Moreover, because Officer Ballew did not signal Defendant to stop, she was not acting pursuant to Virginia Code § 46.2-104.

In sum, the initial interaction was consensual, and thus it not did not implicate the Fourth Amendment. And it yielded reasonable articulable suspicion—in the form of Defendant's admissions—to support the brief investigatory stop that followed. Defendant, then, was not seized in violation of the Fourth Amendment. His conviction thus will be affirmed, and an appropriate Order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record and to United States Magistrate Judge Joel C. Hoppe.

Entered this  27th  day of July, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

10